Good morning, Your Honors. My name is Mark Kearney, and today I have the privilege of representing the Kramont Operating Partnership, the appellant in this matter. I'd like to ask the Madam Clerk to reserve six minutes for rebuttal. The, I mean, just at the beginning, it looked, it was initial claim that your client wanted to be reimbursed $40-some-thousand for Mr. Levy, and then they changed it to $70-some-thousand. Is it possible that the persons who were doing this were actually looking at the 2005, the doing things in terms of taxes, they pay them, and then ask for reimbursement, and that in reality, the amount that we should be talking about here today is the $40,000 amount? No, Your Honor. The $40,000 was an initial preliminary calculation based upon the apportionment factor. The $70,000 was a final calculation as reserved in the initial letters. That was pretty far off. What Your Honor may recall is that in this case, we're talking about consideration paid from a single sale, over a billion dollars in assets, real stuff, shopping centers transferred. The profits earned in the first 118 days of 2005 were negative, as shown on the K-1s, or relative tax forms sent to each limited partner. So they got the benefit of the losses. There were no profits earned. However, let's keep this in mind. The record is clear that the profits, the $23.50 per unit, included the profits that expected to be earned. That was a negotiated number. In fact, in the record, there is a particular provision that specifically says, and I'll 335, 336, that says to the extent any dollar comes out before April 18, 2005, by way of profit distribution, shall be deducted dollar for dollar from your $23.50 per unit. What happened was, you didn't do that. We had no profit. We put it at loss. If you look at the tax forms, all these... No, but the point being that you had the right, when you paid out the consideration, a person got the consideration, to withhold the taxes that that person owed, correct? We had not quite. Under the Delaware... You didn't even have the right to do that? No, we did, but it was a different way. The limited partnership, the Delaware, we return to the great state of Delaware. The Delaware Limited Partnership Act vested complete and withholding taxes to the states, as required by those states, at or around closing. Thereafter, they did the calculations... But my question is, you had the right, it's a yes or a no, you had the right to withhold the taxes at the time the consideration was paid, in this case, on April 21, is that correct? That is correct. It wasn't the way you ordinarily did it, though. That's correct. It was not the way it was done. You ordinarily treated it as a loan. Yes, well, ordinarily, in the past previous four years, it was treated as a loan. Well, are we talking about the new Cremont or the old Cremont? Let's make that clear. That's right. Very good point. There is no new or old Cremont. There's only one Cremont, right? It's the surviving entity. Well, not under... It just happened to be called new Cremont, but it's still just a surviving entity. It's a surviving entity owned by Central Watt. Ownership change, there's nobody disputing that, but you say, in fact, in your brief at page 15, old Cremont terminated at the OP effective time as a matter of law, but the merger documents, 2.1b, says that Cremont OP is the surviving partnership of the merger. So Cremont didn't terminate at all, did it? Yes, it did, Your Honor. How does it terminate? As a matter of entity law, if your agreement says, this is the surviving entity, and after you change your ownership and file your papers, that's the surviving entity, in a legal sense, has the entity, an independent juridical thing, terminated. Under Section 708 of the Internal Revenue Code, looks at it differently than Delaware Limited Partnership Law. You are absolutely correct as a matter of entity law. But why use a federal tax provision to assign a state tax liability? Because that is the derivative. That is the origin of the state tax liability. Let's run through that real quickly. The number that comes out on this transaction of $2,350 a unit is the baseline number. We all understand that. The question I'm asking is what specific proof do you have that states apply Section 708 in the manner you propose? Your Honor, through the brief, we cite every form used by the states throughout. States accept federal forms, correct? States accept the calculation of income based upon the federal 1065. But that's not the issue in this case. Section 708 deals solely with the issue of when federal taxes are due as a result of the termination of the partnership. That's not what we're talking about in this case. Your Honor, here's why. I agree with you, and this is why I argue the district court to a large extent. Section 10.4 of the Limited Partnership Agreement is slam dunk, day over, case done. That is 10.4 gives absolute discretion to the general partner to pay this transaction fee and the taxes as it deems fit. Section 7.7 of the Limited Partnership Agreement, as this court is well aware from the Straus case in Chancery just a year ago where Delaware law interpreted very similar, almost identical provision, says that is absolute discretion on behalf of the general partner. I agree with you. Isn't 10.4 of the Partnership Agreement superseded by 3.8E of the Plan of Merger Agreement? I don't agree so, Your Honor, because under section, this is where we get to 708. The old Cremont, the Cremont entity, old Cremont of course is Cremont owned, new Cremont is Central Watt owned. But that entity. We're having a hard time with old Cremont and new Cremont. Why don't you just call it Cremont because it's the surviving entity, right? Not under tax law, Your Honor. But this is not a tax law case. Your Honor, it is in this sense. Again, not because of our argument, respectfully. It is because the defense is that these things were timed in such a way that the consideration, the 1.8 million I received in consideration, I got as a gift essentially because it was after my partnership terminated. Not as a gift, as part of the agreement between the parties. Maybe I could ask the question this way, Mr. Kearney. Do you have any authority for the proposition that contracting parties cannot choose to assign tax liabilities in the manner they want? No, they can. However, that's not this case though. Well, I guess that's for you to argue and for us to decide. Okay, yes, Your Honor. But your assertion seems to be pinned on and you use repeatedly the language in your briefs that there's an old Cremont and a new Cremont. And therefore, there couldn't be a tax liability that arose after the merger because the entity ceased to exist. But you've acknowledged here today, as I think you're compelled to on this record, that Cremont existed throughout although the ownership changed. So, if the parties are entitled, sophisticated business people are entitled to map out how they want the tax liabilities to fall, what is it about the federal tax code 708 that you think should prompt us to say, well, those sophisticated tax people, they couldn't possibly have decided that the tax was going to fall back on the partnership? The undisputed facts here is the agreement did not allocate the taxes between the parties. Remember here, we're not talking about avoidance of tax. The tax was paid. Right. Precisely. The argument I understand the other side to be making is this. There's 2350 per unit. And that's what we negotiated for. And had we understood that the other side of this deal was going to be saying, plus you're going to pay all the taxes, we would have bargained for more. But we didn't. We bargained for 2350 per unit and the tax liability was going to fall where it was going to fall. And we understood it to fall. It was going to fall on the partnership. So isn't the fact that the agreement is silent on that something that works against your client, Mr. Kearney? No, Your Honor. They're big boys, right? They got together. They're doing a multibillion-dollar deal. If they didn't specify, hey, the taxes are still on you, why should we read that into the document? Because parties aren't compelled, respectfully, to put in their document who pays the taxes. The tax law comes in retrospectively and looks at it and says, on 4.02 p.m. on April 18, that partnership as a matter of law, tax law, terminates. This is the elevation of form over substance. That's what's going on here. What's the relevance of tax law? What we're dealing with is an agreement, a document. Tax law doesn't matter. The IRS isn't in on this case. No, they've been paid. Well, all the taxes have been paid. Well, we're really talking about state taxes. Here, that's right, Your Honor. Not the IRS. Precisely. They've been paid. They're out of the picture. This is your client saying, wait a second. Give it back to me. We could not have meant for this to be the result. Now, respectfully, Your Honor, let me address that. The issue is not whether we meant anything. Delaware law controlling here bars parole evidence, all these thoughts. But more specifically, let's go right at the issue you're talking about. More specifically, the parties here agreed that there would be separated out, that there would be a merger at 4.02 p.m. Tax law then comes in. The parties don't contract what the Internal Revenue Code is going to do. Why does tax law come in? Because, Your Honor, they're claiming, I didn't bring it in, they're claiming that the money, the consideration was paid, the $23.50 a share was paid. You're claiming that we paid your taxes. We paid taxes that were due. Now you give it back to us. That's correct, Your Honor. So you're the ones who are making the claim. My case, if you look at our complaint, was relatively straightforward. 10.4 gives absolute discretion to the general partner to go upon advice and good faith to go and collect the taxes it pays and forwards as a loan. That's our case. The defense to the case was, Your Honor, we weren't part of that agreement because we got paid at 4.18. And I'm saying, wait a second, this is Karn's Fancy Foods all over again. Let's, yeah, we're familiar with Karn's, aren't we? Yes, I know. She wrote the majority right, she wrote the opinion. An incurring opinion about money is significantly less receivable. She was. And I, right here, she's absolutely correct. Your Honor is absolutely correct that the same rule, the district court exalted form over substance. It's absolutely ridiculous that the district court finds that the Internal Revenue Code doesn't apply when each state in its forms uses the definition of income from the Internal Revenue Code. Let's assume for the moment you're right. There's a taxable event on the effective date of April 18. And let's assume for the moment it affects Levy. The 2,000 partnership agreement was in effect, you're saying. But the question is, is that, is Mr. Levy still a partner? The partnership agreement's in effect. The entity still exists. It continues to exist. There's no old and there's no new. But what you have is a change of ownership, as Judge Jordan has noted. In that context, 3.8E of the plan of merger permits Central Watt to withhold from Levy's merger consideration the payments he otherwise would have owed to the state taxing authorities. Perhaps because, likely because of an internal glitch, they did what they always had done in the past was they paid it and they asked for reimbursement. And Levy, you're saying, gets cute and says, I'm no longer a partner. I'm no longer obliged. Under the partnership agreement, the only obligation I have to reimburse you is under the plan of merger 3.8E and you didn't follow the rules of 3.8E, therefore you lose. Your Honor, I'd suggest that that is incorrect as a matter of law because his obligation as a partner is attached at the moment of 4.02 p.m. on April 18. He receives the consideration. No. Yes. But he receives the consideration ahead of time. He took the 1.8 million. He received the consideration three days later. No, he didn't, Your Honor. Respectfully, he did not. He received it that moment. When did he get the consideration?  When did he turn in his certificates to get the 23.50 per share? He received the right under the agreement at that very moment under the termination provisions. That's when he gets the consideration. When did he actually get the money in the record? Well, he had to turn it in. He had to FedEx it in. You see the record. I think he got it on the 21st of April, three days later. But that's not the issue here. As Your Honor pointed out in Karn's fancy, it is the timing of the funds. The law, this would be crazy. This would be the floodgates of floodgates. Karn's is very different from this case. But the Internal Revenue Code, this would turn floodgates upside down. If you said, I have the right to receive it and say, but guess what? I'm not going to receive it for three or four days. The right to receive it was at 418, excuse me, 402 p.m. That is the time the district court erred by finding he got the consideration after the third merger. I think your red light is on. It is, Your Honor. I'm sorry. I reserve time and I'll address any questions. Okay. Thank you. Good morning, Your Honor. Honors. My name is Brian Watson and I'm here on behalf of the appellee, Mr. Irwin Levy. You want to address the assertion Mr. Kearney's made that as a matter of federal tax law, money was received at or before 402 p.m. Today he's saying at, although the briefing is emphatic about it being before, but be that as it may, that there is a forced termination under federal tax law and that that is, that's the whole case right there. Your Honor, that's a very good question and I don't think Mr. Kearney got a chance to really make that argument today. But the argument which he makes in his brief on which his entire argument relies upon an incorrect contention that the exchange of consideration here occurred the moment before or prior to what's been defined as OP effective time. His entire argument relies upon that contention based upon his interpretation and application of 708. That argument is bellied by the plain language of the merger agreement. The merger agreement, which is a governing document here, specifically says that Mr. Levy and the other former partners received the consideration or the right to receive the consideration at OP effective time. It doesn't say immediately before. It doesn't say prior to. It says at OP effective time. And again, if you look at Mr. Kearney's brief in this matter, it relies entirely upon this contention that that exchange happened before OP effective time. And the reason they're making that argument What time was OP effective? Wasn't it 4.02? OP effective time was 4.02 p.m. That's the time of the first merger, the OP merger. And there's no question that's been stipulated to that that's when it happened. The reason Mr. Kearney has had to argue or change his argument that under federal tax code it happened before OP effective time is because they recognize that Mr. Levy and the other former partners' interests terminated at OP effective time. Your argument seemed to be in your brief that 708 of the federal tax code Internal Revenue Code was irrelevant. What evidence do you have that 708 does not apply if all the states that issue accept federal tax filings in lieu of or in conjunction with state filings? That makes 708 obviously relevant, doesn't it? Well, no. And here's why. And here's what the district court determined. It's irrelevant. 708 in federal tax code is irrelevant because the parties here as they're allowed to do contractually agreed to the definition of what they were going to treat as the taxable event. And they agreed on the specific timing of that taxable event. These parties agreed between them that the taxable event for all purposes for all income tax purposes was a combination of three mergers. And those three mergers under the merger agreement were to occur at precise times. Therefore, by definition that taxable event as agreed to by the parties could not occur until the final of those three mergers which was 418. Mr. Watson, your client received Mr. Levy received almost $2 million. To whom were taxes due on that money? Are you asking me to which taxing authority those taxes were due? Yeah. Well, you may be raising that question because there was an argument in our brief that we're not so sure there was a tax due. I know you raised that argument.  just answer the question. Sure. To whom are taxes due? Well, it's Craymont's contention that... No, what's your contention? My contention is there was no... To whom do you think taxes are due if they are due? Our contention is if you look at the reality of this transaction under the economic realities test which my opponent has cited and relied upon that this was a sale of partnership interests that's all it was in which case under applicable... To whom are taxes due if they are due? They would not they are not due to the state authorities. So, they are due to the federal authorities? Remember my question. To whom are taxes due if they are due? I think... Judge Slobider's question. That's okay. Okay. I think at most they would be due to the federal taxing authority. However, that's not the issue here. Did Levy pay taxes to the federal authorities on the two million? I'm not sure if that's reflected in the record and I don't know the answer to that but the parties here to this agreement agreed that if any taxes were incurred as a result of this transaction those taxes would be paid by the continuing partnership and by in effect the new partners which have been swapped out. As a matter of practice, however, when that was done didn't Levy wasn't it done as a loan and didn't he pay that back when requested? As a matter of past practice that's certainly the case, Reiner. But the difference here... You clearly can't be right on what you said in the answer just a moment ago that the new partnership agreed to pay whatever taxes are due. What the agreements the plan of merger 3.8e said that whatever taxes are due they the partnership has a right to withhold them from the amounts payable to the partner. You're right, Reiner. There is a provision which deals with that but I think the more relevant provision here is under section 6.3 of the merger agreement which is entitled tax treatment and that under that provision and I'm going to quote the parties hereto shall treat the mergers a defined term for all income tax purposes as a taxable purchase of assets by acquirer in exchange for the merger consideration and why the district court found this provision to be most pertinent here is for a couple of reasons. One, the defined term mergers. In this provision the parties agreed that the mergers was the taxable event and that for all income tax purposes the mergers took place over a period of about ten minutes. That's right and there's no dispute that the final of those three mergers occurred at 4.18 p.m. Therefore the mergers the taxable event as agreed to by the parties was complete not not until 4.18 at which  all sides concede Mr. Levy was no longer a partner and more importantly the partnership agreement had been replaced by a new partnership agreement to which Mr. Levy was not a member. Let me just telegraph what I've been doing. Even the argument that I was making to your opponent was that even if there is a taxable event and even if Levy owes taxes by virtue of ceasing to be a partner the only thing that binds Levy is the plan of merger which says that the partnership has the right to take those taxes out of monies they pay him. If they do not then that was their missed opportunity. I agree your honor. But I think there's another basis as well which is what I've been saying is that the contracting parties decided between them who was going to be what was the taxable event. That's exactly right. And the reason 708 is not applicable is because 708 applies to the issue of whether or not there is an unjust  claim against Mr. Levy. I would say no your honor because there's a contract here. But why? Well because there's a governing contract which addresses the party's intent with regard to again the consequence who was going to pay that tax following the transaction. If you follow Judge Ambrose questions and implicit reasoning then it's really unfair isn't it that just because Cremont didn't withhold the amount of taxes at the time it gave 23.50 per share it didn't deduct it. Inequity shouldn't Mr. Levy pay it back? Although we agree with Judge Ambrose point that that provision gave Cremont the opportunity at the time of the transaction to withhold I believe of course this isn't an issue but it would have been our contention had that happened that we would have tried to recover that amount which was withheld because we don't think Mr. Levy was obligated to pay it under the merger agreement. None of the former partners including Mr. Levy were obligated to pay that transaction because they were no longer partners and as agreed to in the merger agreement. Wouldn't that just make that provision superfluous? Why would the parties insert it if it weren't to have some meaning? I'm trying to think of a situation in which there may have been some type of tax that could be passed on to the partners here but I can't think of one. Does that make that superfluous? And also when you have the record you have a letter from your client saying I'm just going to stow all it. Giving the money back, right? I disagree. Are you going to the tortious interference claim? You don't have to get on that one. I'll make one final point. It was raised at the very beginning of Mr. Kearney's argument. I think it was raised by one of your Honor's questions. Factually what happened here, the former partners and the new partners negotiated in a highly intense negotiation over a price. The price was $23.50. It wasn't $23.50 and six months from now it would be $23.50. And the record would reflect, although the court didn't address this below because it found the intent apparent on its face, but the only evidence of intent other than what's in the document is the testimony of our client who was very instrumental in the negotiation of this agreement. And his testimony was this was never raised. This issue of the potential of former partners having to pay a state income tax six months down the road was not discussed and it was certainly not his intent or expectation that he would be hit with a tax burden down the road. So you want us to write down the taxes. I keep forgetting. Could have withheld 70 something thousand from Levy and I guess when we talk about Levy we are talking about his family. The Levy group. We could have withheld it at the time we paid it out. We didn't do that because we never have done that before and because you didn't do it then they don't have to pay it back now. That's what our opinion would have to say. I would have expected before Judge Ambrose raised that issue that you would write an opinion that affirms the decision below based upon the party's agreement. The party's agreement to treat the mergers as a taxable event and the party's agreement that as a consequence of their agreement to treat that as a taxable event that any taxes that were incurred were incurred after Mr. Levy was no longer a partner. But addressing Mr. Levy's claim that the merger agreement is under the partnership agreement which is no longer in effect so they haven't made a claim for the partnership agreement. It is not not the partnership agreement under which Mr. Levy was no longer a partner. That partnership agreement 2.6 and 6.2 talks about the partnership agreement existing thereafter. If you look to provision 6.2 and 2.6 6.2 and I'm looking on page 340 of the joint appendix halfway down that page it's a pretty big paragraph says immediately following the OP effect of time that's the first merger and prior to the right effect of time that's the final merger the surviving OP partnership shall amend and restate the surviving OP agreement in a form so there's a surviving partnership right there is a surviving partnership which is as you have correctly pointed out is Cremont however there is a new partnership  under which they bring Mr. Levy has been superseded by a new partnership agreement which came out as a result of 6.2a thank you your honors thank you very much Mr. Butler 6.2a Mr. Kearney maybe you can start off is there  unjust enrichment claim that you would have if you would otherwise lose either by Judge Baleson's analysis or by the analysis that I noted we argue there would not be because we have a contract my question is assuming for the moment you lose without conceding that you lose under either rationale would you have an unjust enrichment claim if we lose the contract if the court rules a limited partnership agreement was in effect when he got the 1.8 million but not in effect when he owed taxes on it if the court rules that Levy did not have to reimburse central what 10.4 however it decides to do that do you have an unjust enrichment claim I don't know if we do because there was no obligation for Mr. Levy to repay it would seem that the defendant has to cause the plaintiff to act in a way that unjustly enriches the defendant that doesn't seem to have happened here he took credit on his tax returns he took credit on his tax returns he caused you on April 21st not to withhold taxes that you believe were due from him there's no mandate I respectfully submit the court can't in 3.8 insert a mandate we have to on April 21st did Levy do something that caused the withholding not to take place of taxable event nowhere in the record counsel can't show you we've all exhausted the record nowhere in the record is a defined taxable event this famed 6.3 that the trial court relied upon the merger in its opinion doesn't talk about taxable event the mergers in the plural the argument that's being put to us is mergers in the plural makes reference to the three mergers contemplated in the agreement and that's the only logical reading of it because those are the only mergers that were in play and that when those mergers plural were done that's when the taxable event hit what are you relying on that the agreement itself the agreement itself talks about the termination of the old cremont because there and then it's over that paragraph 6.3 is just to define it as a taxable purchase of assets that's a context to allow this to go forward would mean yes parties can contract among themselves to find who pays the taxes they didn't hear but they can but it assertion right your opponent's position is they did right you can make logical inferences based on the languages in there but even assuming that this was was not a matter of negotiation what's what's the consequence of there being a provision in the document as judge ambrose pointed gave an opportunity to your client to do something which it declined to do i don't think there's any significance to it i don't think it has i think your honor it is superfluous we had the right to either pay it then or pay it later and seek reimbursement later now i don't          not receive a payment from the district court and who does not receive a payment